1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

CHRISTOPHER CRAIG, et al.,

       Plaintiffs,

  v.

CITY OF KING CITY,  et al.,

       Defendants.

_____/

No. C -11-04219 EDL

**ORDER GRANTING WITH LEAVE TO
AMEND DEFENDANT GLICK'S
MOTION TO DISMISS**

      Plaintiffs, who are police officers and board members of the King City Police Officers
Association (KCPOA), brought this action against numerous Defendants alleging that their civil
rights were violated because they were required to participate in a mandatory weight loss program,
because they were subjected to retaliatory investigations because they voted 'no confidence' against
the Chief of Police because of his alleged misconduct, and, in Plaintiff Craig's case, because he was
wrongfully subjected to a psychological fitness for duty examination.  Before the Court is Defendant
Glick's motion to dismiss, which has been fully briefed.  Glick, who is a psychologist in private
practice, conducted Craig's fitness for duty examination.  Glick moves to dismiss the claim brought
under 42 U.S.C. § 1983 against her and moves to strike the punitive damages claim.

      At the January 10, 2012 Case Management Conference, the parties agreed that the Court
could decide this motion without oral argument.  For the reasons stated in this Order, Glick's motion
is granted with leave to amend.

**Background**

      Plaintiffs allege that Craig was hired by King City as a police officer in March 2005.  Compl.
¶ 14.  Plaintiffs also allege that in April 2010, Craig was elected President of the King City Police
Officer's Association (KCPOA).  Compl. ¶ 17.  Since that time, Plaintiffs allege that he has actively

United States District Court
For the Northern District of California

1    taken part in numerous speech, labor, and political activities in his capacity as president and as a

2    general member.  Id.  Plaintiffs allege that in July 2010, Craig, in his capacity as the president of the

3    KCPOA, wrote a memorandum to Defendant Powers, the City Manager of King City, indicating that

4    the KCPOA gave Defendant Chief of Police Baldiviez a vote of "no confidence."  Compl. ¶ 20.

5    Plaintiffs allege that Craig had voted in favor of the "no confidence" memorandum.  Id.

6          Craig also alleges that he was required by Baldiviez, under threat of termination, to

7    participate in a weight loss program that Craig believed violated state and federal law.  Compl. ¶¶

8    22-26.  Plaintiffs allege that when they requested copies of the personnel files in March 2011, all

9    references to the weight loss program had been removed, allegedly by Defendants to hide their

10   illegal acts.  Compl. ¶ 27.

11         Plaintiffs allege that via the "no confidence" vote, they also expressed their concern about

12   Baldiviez arriving at crime scenes in an intoxicated state.  Compl. ¶¶ 30-32.  Plaintiffs allege that

13   Defendant Powers stated to police officers that he would take any statements against Baldiviez

14   personally, and that he would fire employees for saying anything against Baldiviez.  Compl. ¶ 33.

15   Subsequently, Plaintiffs allege that Craig wrote a memorandum to Powers that they were standing

16   firm with their "no confidence" vote.  Compl. ¶ 34.  In August 2010, Plaintiffs allege that Craig

17   wrote a memorandum on behalf of the KCPOA to Powers objecting to the fact that Powers himself

18   was going to conduct the internal investigation of Baldiviez based on Powers' bias.  Compl. ¶ 36.

19         Plaintiffs allege that on September 14, 2010, Baldiviez returned to work following an

20   internal investigation and administrative leave.  Compl. ¶ 38.  Plaintiffs allege that ten days later,

21   Baldiviez authorized an internal affairs investigation of Craig for incidents that occurred on

22   September 17, 2010 and September 25, 2010.  Compl. ¶¶ 40-42.  Plaintiffs allege that based on these

23   incidents, on December 7, 2010, Baldiviez ordered Craig to undergo an intrusive psychological

24   examination with Defendant Glick, even though Craig's annual evaluation completed on September

25   19, 2010 was positive and devoid of any concern that Craig was unable to perform the duties of a

26   police officer.  Compl. ¶¶ 43, 51.

27         Plaintiffs allege that Craig refused to consent to the release of protected medical and mental

28   health records compiled by Defendant Glick.  Compl. ¶ 52.  They further allege that this angered

1    Defendants and provided an additional motive for retaliation.  Compl. ¶ 52.  On December 31, 2010,

2    Plaintiffs allege that Craig was placed on administrative leave due to Glick's finding that Craig was

3    not fit for duty.  Compl. ¶ 53.

4         On January 3, 2011, Plaintiffs allege that Craig consented to the release of information by

5    Glick only to the extent that she was already authorized to release under state law.  Compl. ¶ 54.

6    Plaintiffs allege that Craig did not consent to the release of detailed privileged psychological

7    confidential information, yet Glick released confidential information in her January 19, 2011 report.

8    Compl. ¶ 54.  Plaintiffs allege that the release of confidential information demonstrates that Glick is

9    not a neutral psychologist and is instead performing retaliatory acts against Craig on behalf of

10   Baldiviez and as an agent of King City.  Compl. ¶ 54.

11        On February 7, 2011, Plaintiffs allege that Baldiviez terminated Craig based on Glick's

12   findings that Craig was not fit for duty.  Compl. ¶ 58.  Plaintiffs allege that Craig strongly disagreed

13   with Glick's findings and that days before he was examined by Glick,  he was examined by a

14   qualified psychologist and found fit for duty.  Compl. ¶ 59.  Craig alleges that Baldiviez failed to

15   consider the fact that Craig was found fit for duty in making his termination decision.  Compl. ¶ 61.

16   **Legal Standard**

17        A complaint will survive a motion to dismiss if it contains "sufficient factual matter . . . to

18   'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)

19   (citing Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007)).  The reviewing court's

20   "inquiry is limited to the allegations in the complaint, which are accepted  as true and construed in

21   the light most favorable to the plaintiff."  Lazy Y Ranch LTD v. Behrens, 546 F.3d 580, 588 (9th

22   Cir. 2008).

23        A court need not, however, accept as true the complaint's "legal conclusions."  Iqbal, 129 S.

24   Ct. at 1949.  "While legal conclusions can provide the framework of a complaint, they must be

25   supported by factual allegations."  Id. at 1950.  Thus, a reviewing court may begin "by identifying

26   pleadings that, because they are no more than conclusions, are not entitled to the assumption of

27   truth."  Id.

28        Courts must then determine whether the factual allegations in the complaint "plausibly give

**United States District Court**
For the Northern District of California

rise to an entitlement of relief." Id.  Though the plausibility inquiry "is not akin to a probability

requirement," a complaint will not survive a motion to dismiss if its factual allegations "do not

permit the court to infer more than the mere possibility of misconduct . . . ." Id. at 1949 (internal

quotation marks omitted) & 1950.  That is to say, plaintiffs must "nudge[] their claims across the

line from conceivable to plausible." Twombly, 550 U.S. at 570.

   Additionally, a court may "strike from a pleading an insufficient defense or any redundant,

immaterial, impertinent, or scandalous matter." Fed. R. Civ. Pro. 12(f).

**Discussion**

**1.     Plaintiff Craig has failed to state a claim against Glick for violation of 42 U.S.C. § 1983**

   Section 1983 imposes civil liability on an individual who "under color [of state law] ...

subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any

rights, privileges or immunities secured by the Constitution and laws."  42 U.S.C. § 1983.  A civil

rights plaintiff suing a private individual under § 1983 must demonstrate that the private individual

acted under color of state law; plaintiffs do not enjoy Fourteenth Amendment protections against

"private conduct abridging individual rights." Burton v. Wilmington Parking Auth., 365 U.S. 715,

722 (1961).  Section 1983 liability attaches only to individuals "who carry a badge of authority of a

State and represent it in some capacity." Monroe v. Pape, 365 U.S. 167, 172 (1961), overruled in

part by Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978). "In the typical case raising a

state-action issue, a private party has taken the decisive step that caused the harm to the plaintiff,

and the question is whether the State was sufficiently involved to treat that decisive conduct as state

action. This may occur ... sometimes if [the State] knowingly accepts the benefits derived from

unconstitutional behavior." Nat'l Collegiate Athletic Ass'n. v. Tarkanian, 488 U.S. 179, 192 (1988).

Constitutional standards should be invoked only "when it can be said that the State is *responsible* for

the specific conduct of which the plaintiff complains." Brentwood Acad. v. Tennessee Secondary

Sch. Athletic Ass'n., 531 U.S. 288, 295 (2001) (quotations omitted) (emphasis in original).

   A § 1983 plaintiff therefore must show that a defendant's actions are "fairly attributable" to

the government. Collins v. Womancare, 878 F.2d 1145, 1151 (9th Cir.1989).  A private individual's

action may be "under color of state law" where there is "significant" state involvement in the action.

**United States District Court**
For the Northern District of California

1   Johnson v. Knowles, 113 F.3d 1114, 1118 (9th Cir.1997).  The Supreme Court has articulated four

2   tests for determining whether a private individual's actions amount to state action: (1) the state

3   compulsion  test; (2) the public function test; (3) the governmental nexus test; and (4) the joint

4   action test.  Id.

5         Glick argues that Plaintiffs have not sufficiently alleged that she is not a state actor under any

6   of these four tests.  First, "[t]he state compulsion test asks whether a private actor who violates

7   someone's constitutional rights under the 'compulsion' or framework of a state law or a state custom

8   having force of law offends the Fourteenth Amendment."  Gorenc v. Salt River Project Agricultural

9   Improvement and Power Dist., 869 F.2d 503, 508 (9th Cir. 1989).  There are no allegations that

10  Glick examined Craig under compulsion of state law or custom.

11        Second, under the public function approach, the relevant question is whether "the function

12  performed has been 'traditionally the *exclusive* prerogative of the state."  Rendall-Baker v. Kohn,

13  457 U.S. 830, 842 (1982) (emphasis in original).  There are no allegations that the fitness for duty

14  examination is within the exclusive prerogative of the City.  Further, Craig alleges that he was

15  subject to a private fitness for duty examination just days before his examination with Glick.

16  Compl. ¶ 59.  The fact that Glick was paid by the City for the examination does not make her a state

17  actor under the public function test.  Rendall-Baker, 457 U.S. at 841 ("Here the relationship between

18  the school and its teachers and counselors is not changed because the State pays the tuition of the

19  students.").

20        Third, Defendant argues that there are no allegations of a governmental nexus between Glick

21  and the City.  A nexus is established if the relationship between the state and the challenged action is

22  sufficiently close so that the action may be fairly treated as that of the state itself.  Jackson v.

23  Metropolitan Edison Co, 419 U.S. 345, 351 (1974) ("But the inquiry must be whether there is a

24  sufficiently close nexus between the State and the challenged action of the regulated entity so that

25  the action of the latter may be fairly treated as that of the State itself.").  Defendant argues that the

26  only allegations of a nexus between the City and Glick are that Baldiviez referred Craig for an

27  examination with Glick in the course of his employment.  Compl. ¶¶ 51-52.

28        Craig argues that Glick's actions were attributable to the state, citing West v. Adkins, 487

United States District Court
For the Northern District of California

1    U.S. 42, 49 (1988).  In <u>West</u>, the Court held that a physician who was under contract with the state

2    to provide medical services to inmates at a state prison hospital on a part-time basis acted under

3    color of state law, within the meaning of § 1983, when he treated an inmate.  The Court stated that

4    because the state had an obligation to provide medical care to its inmates, the doctor's actions were

5    "clothed with the authority of state law." <u>Id.</u> at 55.  Plaintiffs argue that in this case, California law

6    requires that police officers be free from emotional or mental conditions that might adversely affect

7    the proper exercise of their powers.  <u>See</u> Cal. Gov't Code § 1031(f).  In addition, Plaintiffs argue

8    that public agencies like the City must enforce the criteria in section 1031.  <u>Sager v. County of</u>

9    <u>Yuba</u>, 156 Cal.App.4th 1049, 1059 (2007) (stating that the section 1031 standards are incorporated

10   into every peace officer's job description and that public agencies must enforce those standards).

11   Thus, Plaintiffs allege that Craig was required to undergo the psychological examination by Glick.

12   Compl. ¶ 43.  Plaintiffs allege that had Craig had a choice, he would have prevented the examination

13   by Glick and turned over the independent evaluation he had received just days before his

14   examination by Glick. Compl. ¶¶ 59-60.  Plaintiffs argue that because Craig was required to subject

15   himself to examination by a city-paid psychologist, the public agency had delegated its duty to

16   Glick, and therefore, her actions are fairly attributable to the City.

17        <u>West</u>, however, is distinguishable.  In <u>West</u>, the state "outsourced" its duty of medical

18   treatment for inmates whose treatment was exclusively controlled by the state, whereas the

19   administration of fitness for duty examinations is not a traditional and exclusive government

20   function.  Although Plaintiffs allege that Glick was acting in the course and scope of her

21   employment, there are no allegations in this case that Glick was a state employee or under contract

22   with the City.  Further, unlike the prison doctor in <u>West</u>, there are no allegations that Glick worked

23   in a regular part-time capacity conducting fitness examinations of City employees.  There are no

24   allegations that the City controlled her work or controlled the examinations that were performed.

25   Craig has not adequately pled the nexus required for this test.

26        Plaintiffs' claims of conspiracy between Glick and Baldiviez and the City appear to go to the

27   joint action test.  However, conclusory allegations are insufficient to plead conspiracy.  <u>Burns v.</u>

28   <u>County of King</u>, 883 F.2d 819, 821 (9th Cir. 1989) ("Likewise, Burns' claims against all the

defendants for a conspiracy to violate his constitutional rights under section 1983 also fail because they were supported only by conclusory allegations. To state a claim for a conspiracy to violate one's constitutional rights under section 1983, the plaintiff must state specific facts to support the existence of the claimed conspiracy."). Here, Plaintiff alleges that Craig's protected activities, including the "no confidence" memorandum, were covered in the media and local papers. Compl. ¶ 20. Plaintiff alleges that Baldiviez told another person that he had "something in the works" for those who voted in favor of the "no confidence" finding. Compl. ¶ 37. Plaintiffs allege that Baldiviez chose Glick for Craig's fitness for duty examination. Compl. ¶ 11. Plaintiffs allege that Defendants were upset that Craig refused to sign the consent form to disclose his private information. Compl. ¶ 52. Craig alleges that he was examined by a private psychologist days before being examined by Glick and the private psychologist found him fit for duty. Compl. ¶¶ 59, 61. Plaintiffs allege that Glick ignored state medical privacy laws and released private medical information to the police department. Compl. ¶¶ 52-54. Finally, Plaintiffs allege that Baldiviez terminated Craig based on Glick's finding that Craig was not fit for duty. Compl. ¶ 58.

These allegations, however, are insufficient to plead conspiracy. There are no allegations that Glick knew about Craig's protected activities; rather, the allegations are focused on Craig's belief that her report was unfounded and deficient. Compl. ¶ 72. There are also no allegations that Glick knew that her evaluation was the "something in the works" referenced by Baldiviez, that Glick's purported violation of Craig's right to privacy was requested by or in concert with Baldiviez, or that Glick intended to harm Craig by the release of confidential information at the request or instigation of Baldiviez. Thus, there are no allegations of the meeting of the minds to deprive Craig of his constitutional rights that is required for establishing liability for conspiracy. See United Steelworkers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540-41 (9th Cir. 1989) ("To prove a conspiracy between the state and private parties under section 1983, the Steelworkers must show 'an agreement or "meeting of the minds" to violate constitutional rights.'") (internal citations omitted).

Accordingly, Craig has failed to state a claim against Glick for violation of § 1983, and Glick's motion to dismiss is granted. When the Court discussed this motion with the parties at the January 10, 2012 case management conference, Plaintiffs' counsel informed the Court that Plaintiffs

would like leave to amend if the Court granted the motion to dismiss.  The Court grants Plaintiffs

leave to amend, but cautions Plaintiffs that any amended complaint must comply with Federal Rule

of Civil Procedure 11.  An amended complaint shall be filed no later than January 27, 2012.

**2.      Plaintiffs' claims for punitive damages against Glick are stricken**

Because Craig has failed to state a claim against Glick for violation of § 1983, there is no

basis for punitive damages.  However, even if the complaint stated a claim against Glick for

violation of § 1983, Plaintiffs' allegations supporting punitive damages are inadequate under federal

law.  "'It is well-established that a "jury may award punitive damages under section 1983 either

when a defendant's conduct was driven by evil motive or intent, or when it involved a reckless or

callous indifference to the constitutional rights of others."''  Dang v. Cross, 422 F.3d 800, 807 (9th

Cir. 2005) (internal citations omitted).  Further, "clear, malicious, wanton, or oppressive acts or

omissions are within the boundaries of traditional tort standards for assessing punitive damages and

foster 'deterrence and punishment over and above that provided by compensatory awards.'"  Dang,

422 F.3d at 807 (quoting Smith v. Wade, 461 U.S. 30, 45 n.12, 54 (1983)).

Here, there are no specific allegations that Glick acted with malice, oppression or fraud.

Further, there are no allegations in the complaint that Glick acted with an evil motive or displayed

reckless or callous indifference to Craig's constitutional rights.  Thus, the allegations supporting

punitive damages are insufficient.  The motion to strike the punitive damages claim is granted with

leave to amend.

**Conclusion**

Glick's motion to dismiss and to strike is granted with leave to amend.

**IT IS SO ORDERED.**

Dated:  January 17, 2012

_Elizabeth D. Laporte_
ELIZABETH D. LAPORTE
United States Magistrate Judge

8