**United States District Court**
**For the Northern District of California**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER CRAIG, et al., | No. C -11-04219 EDL |
| Plaintiffs, | **ORDER DENYING DEFENDANT GLICK'S MOTION TO DISMISS AND/OR STRIKE** |
| v. | |
| CITY OF KING CITY, et al., | |
| Defendants. | |

Plaintiffs, who are police officers and also executive board members of the King City Police Officers Association, brought this action against numerous Defendants alleging that their civil rights were violated because they were required to participate in a mandatory weight loss program, because they were subjected to retaliatory investigations due to their vote of "no confidence" against the Chief of Police, Defendant Nick Baldiviez, and, in Plaintiff Craig's case, because he was wrongfully subjected to a psychological fitness for duty examination by Defendant Myrna Glick. In January 2012, the Court granted with leave to amend Defendant Dr. Glick's motion to dismiss Plaintiff Craig's claim against her. Plaintiff timely filed an amended complaint, and Dr. Glick brought a second motion to dismiss. On March 27, 2012, the Court held a hearing on Dr. Glick's second motion to dismiss. For the reasons stated at the hearing and in this Order, Dr. Glick's motion to dismiss is denied.

**Background**

Plaintiffs allege that Craig was hired by King City as a police officer in March 2005. First Amended Complaint ("FAC") ¶ 13. Plaintiffs also allege that in April 2010, Craig was elected President of the King City Police Officer's Association (KCPOA). FAC ¶ 16. Since that time, Plaintiffs allege that Craig has actively taken part in numerous speech, labor, and political activities

in his capacity as president and as a general member. Id. Plaintiffs allege that in July 2010, Craig, in his capacity as the president of the KCPOA, wrote a memorandum to Defendant Powers, the City Manager of King City, indicating that the KCPOA gave Defendant Chief of Police Baldiviez a vote of "no confidence." FAC ¶ 19. Plaintiffs allege that Craig had voted in favor of the "no confidence" memorandum. Id.

Craig also alleges that he was required by Baldiviez, under threat of termination, to participate in a weight loss program that Craig believed violated state and federal law. FAC ¶¶ 22-25. Plaintiffs allege that when they requested copies of the personnel files in March 2011, all references to the weight loss program had been removed, allegedly by Defendants to hide their illegal acts. FAC ¶ 26.

Plaintiffs allege that via the "no confidence" vote, they also expressed their concern about Baldiviez arriving at crime scenes in an intoxicated state. FAC ¶¶ 29-31. Plaintiffs allege that Defendant Powers stated to police officers that he would take any statements against Baldiviez personally, and that he would fire employees for making any statements against Baldiviez. FAC ¶ 32. Subsequently, Plaintiffs allege that Craig wrote a memorandum to Powers that they were standing firm with their "no confidence" vote. FAC ¶ 33.

In August 2010, Plaintiffs allege that Craig wrote a memorandum on behalf of the KCPOA to Powers objecting to the fact that Powers was going to conduct the internal investigation of Baldiviez based on Powers' bias. FAC ¶ 34.

Plaintiffs allege that on September 14, 2010, Baldiviez returned to work following an internal investigation and administrative leave. FAC ¶ 36. Plaintiffs allege that shortly thereafter, Baldiviez authorized an internal affairs investigation of Craig for a minor incident that occurred on September 17, 2010 and another incident that occurred on September 25, 2010. FAC ¶¶ 37-39. Plaintiffs allege that based on these incidents, on December 7, 2010, Baldiviez ordered Craig to undergo an intrusive psychological examination with Dr. Glick, even though Craig's annual evaluation completed on September 19, 2010, was positive and devoid of any concern that Craig was unable to perform the duties of a police officer. FAC. ¶¶ 41, 47. Plaintiffs allege that Craig refused to consent to the release of protected medical and mental health records compiled by Dr.

Glick. FAC ¶ 48. Plaintiffs allege that this angered Defendants and provided an additional motive for retaliation. FAC ¶ 48. On December 31, 2010, Plaintiffs allege that Craig was placed on administrative leave due to Dr. Glick's finding that Craig was not fit for duty. FAC ¶ 49.

On January 3, 2011, Plaintiffs allege that Craig consented to the release of information by Dr. Glick only to the extent that she was already authorized to do so under state law. FAC ¶ 50. Plaintiffs allege that Craig did not consent to the release of detailed privileged psychological confidential information, yet Dr. Glick released confidential information in her January 19, 2011 report. FAC ¶ 50. Plaintiffs allege that the release of confidential information demonstrates that Dr. Glick is not a neutral psychologist and is instead performing retaliatory acts against Craig on behalf of Baldiviez and as an agent of King City. FAC ¶ 50.

On February 7, 2011, Plaintiffs allege that Baldiviez terminated Craig based on Dr. Glick's finding that Craig was not fit for duty. FAC ¶ 54. Plaintiffs allege that Craig strongly disagreed with Dr. Glick's findings and that days before he was examined by Dr. Glick, he was examined by a qualified psychologist and found fit for duty. FAC ¶ 55. Craig alleges that Baldiviez failed to consider the fact that Craig was found fit for duty in making his termination decision. FAC ¶ 57.

**Legal Standard**

A complaint will survive a motion to dismiss if it contains "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007)). The reviewing court's "inquiry is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff." Lazy Y Ranch LTD v. Behrens, 546 F.3d 580, 588 (9th Cir. 2008).

A court need not, however, accept as true the complaint's "legal conclusions." Iqbal, 129 S. Ct. at 1949. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 1950. Thus, a reviewing court may begin "by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id.

Courts must then determine whether the factual allegations in the complaint "plausibly give

3

rise to an entitlement of relief." Id. Though the plausibility inquiry "is not akin to a probability requirement," a complaint will not survive a motion to dismiss if its factual allegations "do not permit the court to infer more than the mere possibility of misconduct . . . ." Id. at 1949 (internal quotation marks omitted) & 1950. That is to say, plaintiffs must "nudge[] their claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

Additionally, a court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. Pro. 12(f).

**Discussion**

**1. Plaintiff has stated a claim against Dr. Glick for violation of 42 U.S. C. § 1983**

Section 1983 imposes civil liability on an individual who "under color [of state law] ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. A civil rights plaintiff suing a private individual under § 1983 must demonstrate that the private individual acted under color of state law; plaintiffs do not enjoy Fourteenth Amendment protections against "private conduct abridging individual rights." Burton v. Wilmington Parking Auth., 365 U.S. 715, 722 (1961). Section 1983 liability attaches only to individuals "who carry a badge of authority of a State and represent it in some capacity." Monroe v. Pape, 365 U.S. 167, 172 (1961), overruled in part by Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978). "In the typical case raising a state-action issue, a private party has taken the decisive step that caused the harm to the plaintiff, and the question is whether the State was sufficiently involved to treat that decisive conduct as state action. This may occur ... sometimes if [the State] knowingly accepts the benefits derived from unconstitutional behavior." Nat'l Collegiate Athletic Ass'n. v. Tarkanian, 488 U.S. 179, 192 (1988). Constitutional standards should be invoked only "when it can be said that the State is *responsible* for the specific conduct of which the plaintiff complains." Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n., 531 U.S. 288, 295 (2001) (quotations omitted) (emphasis in original).

A § 1983 plaintiff therefore must show that a defendant's actions are "fairly attributable" to the government. Collins v. Womancare, 878 F.2d 1145, 1151 (9th Cir.1989). A private individual's action may be "under color of state law" where there is "significant" state involvement in the action.

4

1 Johnson v. Knowles, 113 F.3d 1114, 1118 (9th Cir.1997). The Supreme Court has articulated four
2 tests for determining whether a private individual's actions amount to state action: (1) the state
3 compulsion test; (2) the public function test; (3) the governmental nexus test; and (4) the joint
4 action test. Id.

5 Dr. Glick argues that Plaintiffs have not sufficiently alleged that she is a state actor under any
6 of these four tests. First, "[t]he state compulsion test asks whether a private actor who violates
7 someone's constitutional rights under the 'compulsion' or framework of a state law or a state custom
8 having force of law offends the Fourteenth Amendment." Gorenc v. Salt River Project Agricultural
9 Improvement and Power Dist., 869 F.2d 503, 508 (9th Cir. 1989). There are no allegations that Dr.
10 Glick examined Craig under compulsion of state law or custom.

11 Second, under the public function approach, the relevant question is whether "the function
12 performed has been 'traditionally the *exclusive* prerogative of the state." Rendall-Baker v. Kohn,
13 457 U.S. 830, 842 (1982) (emphasis in original). There are no allegations that the fitness for duty
14 examination is within the exclusive prerogative of the City. Further, Craig alleges that he was
15 subject to a private fitness for duty examination just days before his examination with Dr. Glick.
16 FAC ¶ 57. The fact that Dr. Glick was paid by the City for the examination does not make her a
17 state actor under the public function test. Rendall-Baker, 457 U.S. at 841 ("Here the relationship
18 between the school and its teachers and counselors is not changed because the State pays the tuition
19 of the students.").

20 Third, Dr. Glick argues that there are no allegations of a governmental nexus between her
21 and the City. A nexus is established if the relationship between the state and the challenged action is
22 sufficiently close that the action may be fairly treated as that of the state itself. Jackson v.
23 Metropolitan Edison Co, 419 U.S. 345, 351 (1974) ("But the inquiry must be whether there is a
24 sufficiently close nexus between the State and the challenged action of the regulated entity so that
25 the action of the latter may be fairly treated as that of the State itself."). Craig argues that Dr.
26 Glick's actions were attributable to the state, citing West v. Adkins, 487 U.S. 42, 49 (1988). In
27 West, however, the state "outsourced" its duty of medical treatment for inmates whose treatment
28 was exclusively controlled by the state, whereas the administration of fitness for duty examinations

5

in this case is not a traditional and exclusive government function. Although West is distinguishable, the Court concludes that Plaintiffs have made a sufficient showing that Dr. Glick was a state actor under the nexus test to survive a motion to dismiss. Plaintiffs allege that the Chief of Police prior to Baldiviez stopped using Dr. Glick because of an evaluation of another officer in another case. FAC ¶ 70. Plaintiffs allege that Dr. Glick felt pressure to make Baldiviez happy with her work, so she could continue to receive the financial benefit from the City for referrals for examinations. FAC ¶ 70. Plaintiffs allege that Dr. Glick performed many of the pre-employment psychological evaluations for King City. FAC ¶ 70. They allege that Craig was ordered to undergo the psychological examination by Dr. Glick. FAC ¶ 41. Plaintiffs also allege that Dr. Glick sent drafts of her report concerning Craig to Baldiviez and the King City City Attorney before finalizing the document, asking Baldiviez if the report was "OK with you" and indicating that she had already received the OK from the City Attorney. FAC ¶ 73. Dr. Glick allegedly invited Baldiviez to provide ways to improve the report. FAC ¶ 73 ("In a different draft sent over to Defendant Baldiviez, Defendant Glick states, 'Dear Chief and Asst. Counsel, the following is a draft of my evaluation of Officer Craig. I would appreciate both of your comments regarding the accuracy and legal appropriateness of what I have written. I am open to all suggestions and believe that most psychologists would be able to discern the underlying diagnoses, as well as the possibility of neurological sequelae from Officer Craig's Accident. I appreciate your advice and expertise.'"). Plaintiffs allege that Dr. Glick worked in a regular part-time capacity conducting examinations, and that the City controlled her work to the extent that Dr. Glick coordinated her final reports with Baldiviez. FAC ¶ 70.

Finally, Plaintiffs argue that there was a conspiracy between Dr. Glick and Baldiviez and the City, which goes to the joint action test. Conclusory allegations are insufficient to plead conspiracy. Burns v. County of King, 883 F.2d 819, 821 (9th Cir. 1989) ("Likewise, Burns' claims against all the defendants for a conspiracy to violate his constitutional rights under section 1983 also fail because they were supported only by conclusory allegations. To state a claim for a conspiracy to violate one's constitutional rights under section 1983, the plaintiff must state specific facts to support the existence of the claimed conspiracy."); DeGrassi v. City of Glendora, 207 F.3d 636, 647 (9th Cir.

6

2000) ("Under § 1983, a claim may lie against a private party who 'is a willful participant in joint action with the State or its agents. Private persons, jointly engaged with state officials in the challenged action, are acting 'under color' of law for purposes of § 1983 actions.' However, a bare allegation of such joint action will not overcome a motion to dismiss; the plaintiff must allege 'facts tending to show that [the Andrewses] acted 'under color of state law or authority.'") (internal citations omitted). To adequately plead conspiracy, Plaintiffs must show an agreement or a meeting of the minds on the part of the defendants to violate Plaintiffs' constitutional rights. Woodrum v. Woodward Co., 866 F.2d 1121, 1126 (9th Cir. 1989).

Here, Plaintiffs have sufficiently alleged a conspiracy for purposes of the joint action test to survive a motion to dismiss. Plaintiffs allege that Craig's protected activities, including the "no confidence" memorandum, were extensively covered in the media and local papers. FAC ¶ 19. Plaintiffs allege that Dr. Glick admitted that she was aware of the "no confidence" vote through the media. FAC ¶ 68. Plaintiffs allege that when Baldiviez drafted his referral memo to Dr. Glick before her examination of Craig, he stated: " . . . Officer Craig has been completely defiant of my orders, challenging my authority, completely defiant of the chain of command and regularly goes over everyone's head to the City Council members." FAC ¶ 68. Plaintiffs allege on information and belief that this statement specifically references one of the protected activities of Craig, that is, the vote of no confidence in Baldiviez. FAC ¶ 68. Plaintiffs further allege that Baldiviez indirectly communicated with Dr. Glick that he would agree with a finding of unfitness because he stated to Dr. Glick in the referral memo that, in his "professional opinion," Baldiviez thought that Craig was displaying warning signs that required "immediate psychiatric attention," and that "Craig appears to have traces of narcissism, severe paranoia, complete defiance to those in authority, exaggerated perceptions, and possible bi-polar illness." FAC ¶ 69. Plaintiffs allege that Baldiviez is not qualified to render these opinions. FAC ¶ 69. Plaintiffs allege that it appeared that Baldiviez was giving Dr. Glick a list of potential diagnoses from which she could choose at the conclusion of her evaluation. FAC ¶ 69. Further, Plaintiffs allege that Dr. Glick performed only one other fitness for duty examination on another officer prior to her evaluation of Craig, and that during that two-day evaluation of the other officer, Dr. Glick's demeanor changed from friendly to cold overnight after

Dr. Glick spoke to Baldiviez after the first day of the examination. FAC ¶ 71. Plaintiffs allege that Dr. Glick's demeanor changed because she found out that Baldiviez did not want that officer to return to the police department, and then Dr. Glick found that officer unfit for duty. FAC ¶ 71.[1] In addition, as described above, Plaintiffs also allege that Dr. Glick had a financial motive to coordinate her efforts with Baldiviez.

In addition, Plaintiffs allege that Craig consented to the release of limited medical information, and did not consent to the release of detailed privileged psychological information. FAC ¶ 50. Nevertheless, Plaintiffs allege that Dr. Glick unlawfully released confidential information in her January 19, 2011 report in disregard of Craig's right to privacy. Id. Thus, Plaintiffs allege that Dr. Glick was not a neutral psychologist and that she performed retaliatory acts against Craig on behalf of Baldiviez. Id.

Plaintiffs further allege that expert testimony will show that the raw data used by Dr. Glick does not support her conclusion that Craig was unfit, that she relied on tests that were inappropriate for fitness for duty examinations, and that there were tests she could have used but did not, to address any alleged concerns. FAC ¶ 72. Plaintiffs allege that this was because Dr. Glick was looking for any reason to find Craig unfit. Id.

Accordingly, taking Plaintiffs' factual allegations as true, which the Court must do at this stage, the Court denies Dr. Glick's motion to dismiss because Plaintiffs have alleged sufficient facts to support § 1983 liability against Dr. Glick as a state actor.

**2. Defendant's motion to strike Plaintiffs' claims for punitive damages against Dr. Glick is denied**

The Ninth Circuit has stated that: "'[i]t is well-established that a 'jury may award punitive damages under section 1983 either when a defendant's conduct was driven by evil motive or intent, or when it involved a reckless or callous indifference to the constitutional rights of others.'''" Dang v. Cross, 422 F.3d 800, 807 (9th Cir. 2005). Further, "clear, malicious, wanton, or oppressive acts or omissions are within the boundaries of traditional tort standards for assessing punitive damages

---

[1] Defendant moves to strike paragraphs 70 and 71 pertaining to Dr. Glick's examination of another police officer, arguing that these allegations add nothing to Plaintiffs' claims. These allegations are not "redundant, immaterial, impertinent or scandalous" to justify striking them under Federal Rule of Civil Procedure 12(f).

8

and foster 'deterrence and punishment over and above that provided by compensatory awards.'" Dang, 422 F.3d at 807 (quoting Smith v. Wade, 461 U.S. 30, 45 n.12, 54 (1983)).

Here, the allegations against Dr. Glick, in particular, that she essentially tailored her report to the outcome that Baldiviez allegedly wanted by providing drafts of the report to Baldiviez and the City Attorney, are sufficient to show that Dr. Glick acted with at least reckless indifference. Thus, at the pleading stage, Plaintiffs's request for punitive damages survives a motion to strike.

**Conclusion**

Accordingly, Dr. Glick's motion to dismiss and/or strike is denied.

**IT IS SO ORDERED.**

Dated: March 29, 2012

ELIZABETH D. LAPORTE
United States Magistrate Judge