Vincent P. Hurley #111215
Raymond Thomas #271425
LAW OFFICES OF VINCENT P. HURLEY
A Professional Corporation
38 Seascape Village
Aptos, California 95003
Telephone:  (831) 661-4800
Facsimile:  (831) 661-4804

Attorneys for Defendants
CITY OF KING CITY, NICK BALDIVIEZ, MICHAEL POWERS,
MARK BAKER, and JERRY HUNTER

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CHRISTOPHER CRAIG, ABRAHAM AGUAYO, and JAIME ANDRADE,<br><br>　　　　　Plaintiffs,<br><br>vs.<br><br>CITY OF KING CITY, a municipal corporation; NICK BALDIVIEZ, individually and as Chief of Police for the King City Police Department; MICHAEL POWERS, individually and as City Manager for the King City; MARK BAKER, individually and as Sergeant for the King City Police Department; JERRY HUNTER, individually and as "acting" Sergeant for the King City Police Department; MYRNA GLICK, individually, and as an agent for King City; THE STEWART, LLC, dba Aaron's Sales and Lease; and DOES 1-10, inclusive.<br><br>　　　　　Defendants. | Case No. CV11-04219 EDL<br><br>NOTICE OF MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFFS' SECOND AND SIXTH CAUSES OF ACTION BY DEFENDANTS CITY OF KING CITY, NICK BALDIVIEZ, MICHAEL POWERS, MARK BAKER, AND JERRY HUNTER; MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT<br><br>Date:　　　October 9, 2012<br>Time:　　　9:00 a.m.<br>Courtroom: E, 15th Floor<br><br>Magistrate Judge Elizabeth D. Laporte<br><br>Trial Date:　January 22, 2013 |

**TABLE OF CONTENTS**

I.   STATEMENT OF THE CASE ........................................................................................ 2

II.  STATEMENT OF FACTS ............................................................................................. 2

    A.   The Police Department Weight Loss Program. .................................................. 2

    B.   KCPOA Vote of No Confidence in Chief Baldiviez. ......................................... 3

    C.   Misconduct Complaint that Aguayo Abused Police Powers. ............................. 4

    D.   Discipline of Andrade for Disobedience of the Chief's Order and for Violating Department Procedures for Handling Citations and Reports. ............. 5

    E.   Craig's Misconduct and Emotional Outbursts with Sergeants. ........................... 5

    F.   Craig's Termination and Aguayo's Disciplinary Termination were Appealed and Reversed by Arbitration. .............................................................. 6

        1.   Arbitrators' Decisions. ............................................................................. 6

        2.   Remedies Achieved by Plaintiffs. ............................................................ 6

III. ARGUMENT .................................................................................................................. 7

    A.   Statement of Law. ............................................................................................... 7

    B.   The Plaintiffs Have Not Shown and Cannot Show that They Were Unlawfully Discriminated Against Due to Disability; Therefore, Partial Summary Judgment Dismissing Their Discrimination Claim Under the ADA is Appropriate. ........................................................................ 8

        1.   The Plaintiffs do not qualify as "disabled" since obesity is not a disability. ..................................................................................... 8

        2.   King City did not regard Plaintiffs as disabled because they were not considered to have a physical impairment that substantially limited a major life activity. ............................................ 9

        3.   There is no evidence that either Andrade or Craig were subjected to adverse employment actions because of any actual or perceived disability. ............................................................. 12

    C.   Partial Summary Judgment Should be Granted Dismissing the Sixth Cause of Action Since it is Undisputed that There Was No Interference with Plaintiff's Union Membership and Activity. .............................................. 13

IV.  CONCLUSION ............................................................................................................ 14

# TABLE OF AUTHORITIES

*Andrews v. State of Ohio*, 104 F.3d (6th Cir. 1997)..................................................................9

*Cassista v. Community Foods, Inc.*, 5 Cal.4th (1993) ...............................................................10

*Celotex Corp. v. Catrett*, 477 U.S. (1986) ...................................................................................7

*E.E.O.C. v. United Parcel Serv., Inc.*, 306 F.3d (9th Cir. 2002) ...........................................9, 11

*E.E.O.C. v. Watkins Motor Lines, Inc.*, 463 F.3d (6th Cir. 2006)..............................................10

*E.piphany, Inc. v. St. Paul Fire & Marine Ins. Co.*, 590 F. Supp. 2d (N.D. Cal. 2008).........7, 8

*Francis v. City of Meriden*, 129 F.3d (2d Cir. 1997) .................................................................10

*Gomez v. Am. Bldg. Maint.*, 940 F. Supp. (N.D. Cal. 1996).......................................................8

*Murphy v. United Parcel Serv.*, Inc., 527 U.S. (1999)................................................................12

*Walton v. U.S. Marshals Serv.*, 492 F.3d (9th Cir. 2007).......................................................9, 11

## Codes & Statutes

42 U.S.C.A. § 12102....................................................................................................................9

29 C.F.R.1630.2.....................................................................................................................9, 10

CA Gov't Code §3302(a) ...........................................................................................................13

## Other Authorities

*U.S. Equal Opportunity Comm'n v. Res. for Human Dev.*,
2:10-CV-03322, 2012 WL 669435 (E.D. La. Feb. 29, 2012)....................................................10

1    TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

2    PLEASE TAKE NOTICE that on October 9, 2012, at 9:00 a.m., at 450 Golden Gate Avenue, San Francisco, California, in Courtroom E, Fifteenth Floor, before the honorable Magistrate Judge Elizabeth D. Laporte, Defendants CITY OF KING CITY, NICK BALDIVIEZ, MICHAEL POWERS, MARK BAKER AND JERRY HUNTER will move the Court under Federal Rule of Procedure 56 for an order that partial summary judgment should be entered in favor of Defendants and against Plaintiffs for the following reasons:

Summary judgment should be granted in favor of Defendant KING CITY on Plaintiffs' second cause of action of the First Amended Complaint for violation of the Americans with Disabilities Act because there is no material disputed fact that should be decided by a jury that Plaintiffs were qualified disabled persons, or that the City perceived them to be qualified disabled persons with a recognized disability, because obesity is not an ADA recognized impairment or disability.

Summary judgment should be granted in favor of Defendants on Plaintiffs' sixth cause of action of the First Amended Complaint for violation of the Public Safety Officers Procedural Bill of Rights because there is no material disputed fact that should be decided by a jury whether Plaintiffs were prohibited from participating in any political activity by any order of Defendant Baldiviez since the facts are undisputed that Plaintiffs were not prohibited from engaging in political activity. The motion will be based on this notice, the memorandum of points and authorities, declarations and exhibits submitted herewith, and on the oral argument of counsel at the time of the hearing.

Dated: September 4, 2012

        LAW OFFICES OF VINCENT P. HURLEY
        A Professional Corporation

        By:    /s/ Raymond Thomas
              RAYMOND THOMAS
        Attorneys for Defendants CITY OF KING CITY, MARK BAKER, NICK BALDIVIEZ, MICHAEL POWERS, and JERRY HUNTER

## I.

## STATEMENT OF THE CASE

This action was originally filed on May 23, 2011 in the United States District Court for the Central District of California by Plaintiffs JAIME ANDRADE, ABRAHAM AGUAYO, and CHRISTOPHER CRAIG against Defendants CITY OF KING CITY, Police Chief NICK BALDIVIEZ, Sergeant MARK BAKER, Sergeant JERRY HUNTER, and City Manager MICHAEL POWERS (known as "King City Defendants"), as well as Dr. MYRNA GLICK, and THE STEWART, LLC, dba Aaron's Sales and Lease, alleging violations of civil rights, the First Amendment, the Americans with Disabilities Act ("ADA"), and several state claims including violations of the Meyers-Milias-Brown Act, Peace Officers Bill of Rights Act, and Confidentiality of Medical Information Act.  The Stewart, LLC, dba Aaron's Sales and Lease was dismissed in July of 2011.

Defendants' motion to transfer from the Central District was granted in August of 2011. The case is currently set for jury trial on January 22, 2013.  This motion is for partial summary judgment to adjudicate and dismiss Plaintiffs' Second Cause of Action for discrimination claims based on the Americans with Disabilities Act, and Sixth Cause of Action for violation of California Government Code section 3302 in the California Public Safety Officers Procedural Bill of Rights.

## II.

## STATEMENT OF FACTS

**A.    The Police Department Weight Loss Program.**

Plaintiffs are police officers in King City.  Defendant Nick Baldiviez is the Chief of Police, while both Mark Baker and Jerry Hunter were sergeants.  Michael Powers is the City Manager.  Baldiviez Dec. ¶1.

In January 2010, the city council for King City initiated a weight loss program to be administered by City Manager Powers and Chief Baldiviez.  Baldiviez Dec. ¶2.  Defendants

Jerry Hunter and Mark Baker did not take part in the weight loss program or its implementation and did not have control over who was enrolled. Hunter Dec. ¶2; Baldiviez Dec. ¶¶3-4.

The program was initiated to assure that officers would be able to meet the physical requirements of the job. Baldiviez Dec. ¶2. The idea for the weight loss program came from the King City Police Officers Association's ("KCPOA") recommendation for a mandatory physical fitness test to address overweight police officers. Hunter Dec. ¶3; **Ex. U**. All three Plaintiffs were members of the KCPOA at the time of the recommendation and all three voted in favor of the fitness test recommendation. Hunter Dec. ¶3. Chief Baldiviez placed Plaintiffs Andrade and Craig and three other sworn officers in the weight loss program. Baldiviez Dec. ¶4. None of the officers involved in the program was ever removed from his duties and none was evaluated as having physical limitations based on disability. Baldiviez Dec. ¶5. Plaintiffs Andrade and Craig did not have any previous disciplinary actions relating to their weight, but they did appear overweight. Andrade was five feet, ten inches tall, weighing 257 pounds. Craig was five feet, eight inches tall, weighing 262 pounds. Baldiviez Dec. ¶ 4**; Exs. C and D**.

Plaintiffs Craig and Andrade participated in the weight loss program and initially lost weight. Baldiviez Dec. ¶¶10-11. However, after first starting on the program, Craig objected to it and gained 35 more pounds, from 262 to 297 pounds. Baldiviez Dec. ¶10; **Ex. E**. Plaintiffs Craig and Andrade then complained to City Manager Powers that the program was unlawful because it provided the possibility of termination for failure to follow orders. Baldiviez Dec. ¶12. Faced with the grievance, Defendant Powers dropped the weight loss program. Baldiviez Dec. ¶13.

**B.    KCPOA Vote of No Confidence in Chief Baldiviez.**

Plaintiffs accused Chief Baldiviez of misconduct, and went to the city council to publicly present their vote of no confidence. Other officers appeared at the meeting to disagree with the Plaintiffs' presentation. Chief Baldiviez was placed on leave pending investigation of Plaintiffs'

1  complaint. When Plaintiffs were disciplined for misconduct, they claimed that the investigation
2  and discipline were retaliation for their expression of First Amendment rights to appear at the
3  city council meeting. This motion does not address Plaintiffs' First Amendment claims pled in
4  their first cause of action in their First Amended Complaint.

   **C.     Misconduct Complaint that Aguayo Abused Police Power While Off-Duty.**

6        In September 2010, Mr. Salas, a resident of Salinas, reported to the Salinas Police
7  Department that Plaintiff Aguayo had forcibly entered Salas's residence to serve divorce papers
8  on him on behalf of a relative of Aguayo's girlfriend. Baldiviez Dec. ¶14. Salinas P.D.
9  contacted King City P.D. and Salas also filed a complaint with the KCPD. Baldiviez Dec. ¶14;
10 **Ex. G**. Chief Baldiviez initiated an Internal Affairs (IA) investigation. Baldiviez Dec. ¶14-15.
11 Aguayo was placed on paid leave until the completion of the investigation. Baldiviez Dec. ¶15;
12 **Ex. H.** Aguayo was ordered not to have contact with anyone involved in the investigation and
13 City employees, except that he could communicate with his union representatives and otherwise
14 as directed by the Chief. Baldiviez Dec. ¶16; **Ex. H**. Baldiviez additionally issued an order that
15 all department employees who communicated with Aguayo during the investigation and while he
16 was on paid leave should report such contact to Chief Baldiviez. Baldiviez Dec. ¶17; **Ex. I.**
17 Chief Baldiviez did not issue an order prohibiting all communication with Aguayo. Baldiviez
18 Dec. ¶17; **Ex. I**. Even when the order was in place, Aguayo attended a union meeting. Cohen
19 Dec. ¶2; **Ex. V**, 95:17-97:6. Aguayo's attorney complained that the order would interfere with
20 Aguayo's union activity (Baldiviez Dec. ¶17; **Ex. J**), so Baldiviez modified the order to allow
21 any communication that did not have to do with the investigation of Aguayo's conduct.
22 Baldiviez Dec. ¶17; **Ex. K**.
23        During the investigation, department personnel found that Aguayo had violated other
24 department policies including failing to complete required arrest reports. Baldiviez Dec. ¶18.
25        Based on the findings in the internal affairs report, Chief Baldiviez determined that
26 termination was appropriate. Baldiviez Dec. ¶19; **Ex. L**. The basis for the decision was that

28 Memo of P&A ISO Defts' Mot for Partial Sum Judg       4       Case No. CV11-04219 EDL

Aguayo had committed multiple violations of department policies, including that he had criminally trespassed into Salas's residence, that he provided false/misleading testimony to officers investigating the incident, that he additionally failed to complete required police reports after specific direction, that he violated the Chief's no-contact order by contacting Andrade, that he failed to keep the department up-to-date on his current address, and that he failed to properly record and file department copies of a traffic citation.  Baldiviez Dec. ¶19.

### D. Discipline of Andrade for Disobedience of the Chief's Order and for Violating Department Procedures for Handling Citations and Reports.

Chief Baldiviez found out that Andrade was communicating with Aguayo during the time that he was ordered to report any such communications, and Andrade did not report the communications.  Baldiviez Dec. ¶¶20-21.  The known communications involved Aguayo contacting Andrade to have him co-sign on a private loan with former Defendant Aaron's Sales and Lease Company in Salinas, California.  Baldiviez Dec. ¶21; **Ex. M**, Pgs 15-16 (AA0598-0599).  Andrade was suspended on January 20, 2011, after an internal investigation was initiated and confirmed that Andrade failed to report communications he had with Aguayo.  Baldiviez Dec. ¶22; **Ex. N**.  Andrade was suspended again on April 25 for poor performance, which included failing to complete work assignments, failing to properly handle evidence, and failing to follow protocol for voiding eight traffic citations.  Baldiviez Dec. ¶¶23-24; **Exs. O and P**.

### E. Craig's Misconduct and Emotional Outbursts with Sergeants.

In September of 2010, Chief Baldiviez received complaints from Craig's supervisors regarding misconduct and insubordination.  Baldiviez Dec. ¶25.  Sergeant Baker informed the Chief of an incident one night in which Sergeant Baker gave Craig a direct order while on duty to transport a prisoner from King City P.D. to the Monterey County Jail and return immediately due to a lack of available officers that night.  Baldiviez Dec. ¶25; **Ex. Q**.  Instead, Craig made multiple stops, including a trip to the grocery store to buy candy for county dispatchers in Salinas, and a stop in Greenfield to speak with another officer.  Baldiviez Dec. ¶25; **Ex. Q.**  As a

result, an IA investigation was initiated and a complaint of insubordination and other charges were sustained. Baldiviez Dec. ¶25; **Ex. Q.**

The Chief received another complaint of misconduct concerning Craig from Sergeant Hunter that same month. Baldiviez Dec. ¶25. In that incident, he ranted and used obscenities to Hunter after some of his police reports were rejected for required corrections. Baldiviez Dec. ¶25; **Ex. Q**. As a result, Chief Baldiviez initiated another IA investigation and almost all of the allegations were sustained. Baldiviez Dec. ¶25; **Ex. Q**. Due to concerns regarding Craig's temperament and possible emotional problems, the Chief elected not to discipline him. Instead, Craig was ordered to undergo a fitness for duty exam with Dr. Myrna Glick. Baldiviez Dec. ¶26. Dr. Glick subsequently found that Craig was not fit for duty, and disclosed her findings to Chief Baldiviez. Baldiviez Dec. ¶26. Craig was then terminated from the King City Police Department. Baldiviez Dec. at ¶26; **Ex. R**.

**F.     Craig's Termination and Aguayo's Disciplinary Termination were Appealed and Reversed by Arbitration.**

1.    Arbitrators' Decisions

The arbitrator in Craig's appeal found that Craig could have been subjected to discipline for his violations, but that did not warrant a fitness for duty examination and termination. Baldiviez Dec ¶28; **Ex. S**. The arbitrator concluded that, since the arbitrator felt there should have been lesser discipline and no fitness examination, the Chief must have been retaliating for the vote of no confidence issued by the KCPOA, even though acknowledging that Craig did violate department policies.

The arbitrator in Aguayo's appeal found that Aguayo had violated KCPD rules and regulations warranting discipline, but not termination. Baldiviez Dec. ¶29**; Ex. T**.

2.    Remedies Achieved by Plaintiffs

Aguayo's arbitrator rescinded his termination and ordered that he be made whole for any loss of pay or benefits from his time of discharge. Baldiviez Dec. ¶29; **Ex. T**. Craig's arbitrator

ordered that he be reinstated and made whole. Baldiviez Dec. ¶28; **Ex. S**. Neither arbitrator granted attorneys fees, sanctions, or punitive and/or general damages. Baldiviez Dec. ¶¶28, 29; **Exs. S and T**. The Plaintiffs were reimbursed for their lost wages, pension contributions and insurance premiums. They were made whole as required by the arbitrators.

The King City Defendants now move for partial summary judgment as follows: Plaintiffs' claims in the Second Cause of Action based on the Americans with Disabilities Act should be dismissed because obesity is not a recognized disability under the ADA, and Plaintiffs' Sixth Cause of Action should be dismissed because there is no material disputed fact that Plaintiffs were prohibited from participating in any political activity by any order of Chief Baldiviez.

### III.

### ARGUMENT

**A.  Statement of Law.**

"As with a motion under Rule 56(c), partial summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *E.piphany, Inc. v. St. Paul Fire & Marine Ins. Co.*, 590 F. Supp. 2d 1244, 1250 (N.D. Cal. 2008) citing FRCP 56(c). "…the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, (1986). "The purpose of partial summary judgment 'is to isolate and dispose of factually unsupported

claims or defenses.'" *E.piphany, Inc. v. St. Paul Fire & Marine Ins. Co.*, 590 F. Supp. 2d 1244, 1250 (N.D. Cal. 2008) citing *Celotex v. Catrett, supra* at 323-24, (1986).

"When evaluating a motion for partial or full summary judgment, the court views the evidence through the prism of the evidentiary standard of proof that would pertain at trial and where a rational trier of fact could not find for the non-moving party based on the record as a whole, there is no 'genuine issue for trial.'" *E.piphany, Inc.*, *supra* at 1250 citing *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 255 (1986).

**B.     The Plaintiffs Have Not Shown and Cannot Show That They Were Unlawfully Discriminated Against due to Disability; Therefore, Partial Summary Judgment Dismissing Their Discrimination Claim Under the ADA is Appropriate.**

In order to qualify for relief under the ADA, a plaintiff must show: "1) that he is a disabled person within the meaning of the ADA; 2) that he is qualified, with or without reasonable accommodation, to perform the essential functions of the job that he holds or seeks; and 3) that he has suffered an adverse employment decision because of his disability." *Gomez v. Am. Bldg. Maint.*, 940 F. Supp. 255, 257 (N.D. Cal. 1996) citing *Sanders v. Arneson Products, Inc.,* 91 F.3d 1351, 1354 (9th Cir.1996).  "As with discrimination cases generally, a plaintiff in an ADA case at all times bears the ultimate burden of establishing that he has been the victim of illegal discrimination based on his disability." *Ibid.*  In the present case, Plaintiffs Andrade and Craig have not shown any evidence in regards to the first and third elements: that they qualified as disabled under the ADA, and that they were subjected to an adverse employment action because of their "disability".

1.     <u>The Plaintiffs do not qualify as "disabled" since obesity is not a disability</u>.

Count two of the Plaintiffs' First Amended Complaint alleges that City of King City discriminated against Plaintiffs Craig and Andrade because they were regarded as severely obese.  FAC at 25, ¶85.  Obesity is not a disability.  In the ADA, "disability" is (1) a physical or mental impairment that substantially limits one or more major life activities of such individual;

or (2) a record of such an impairment;[1] or (3) being regarded as having such an impairment. 42 U.S.C.A. § 12102. In this case, Plaintiffs have adamantly denied that obesity limited one or more major life activities, and they have not pled that they were disabled. Thus, Plaintiffs' claim is exclusively that they were regarded by King City as having a disability.

2. <u>King City did not regard Plaintiffs as disabled because they were not considered to have a physical impairment that substantially limited a major life activity.</u>

A Plaintiff claiming he was regarded as disabled must provide evidence that the employer subjectively believed that the Plaintiff was substantially limited in a major life activity because of an impairment. *Walton v. U.S. Marshals Serv.*, 492 F.3d 998, 1005-1006 (9th Cir. 2007); *E.E.O.C. v. United Parcel Serv., Inc.*, 306 F.3d 794, 803-04 (9th Cir. 2002) citing *Thompson v. Holy Family Hosp.,* 121 F.3d 537, 541 (9th Cir.1997). In other words, to be regarded as disabled, the condition that the employer perceives must be an actual disability. *Andrews v. State of Ohio*, 104 F.3d 803 (6th Cir. 1997) is a very similar case to the present and is instructive. In *Andrews*, several law enforcement officers brought an action under the ADA contending that they were discriminated against based on a perceived disability, i.e., that they were overweight. *Id.* at 805. The Ohio Highway Patrol had instituted a fitness program establishing criteria for all of its troopers, including a maximum weight limit. *Id.* at 805-806. As in the present case, the officers believed that the weight loss limits were not job related and that they were discriminated against because those troopers were perceived to be impaired due to excessive weight. *Ibid.* The 6th Circuit held that obesity alone does not constitute a perceived impairment under the ADA. *Id.* at 808-809. The court reasoned that federal regulations interpret "impairment" to be a physical or mental condition (29 C.F.R. 1630.2(h)) and obesity does not fall under either category. *Id.* at 808.

The appendix to 29 C.F.R.1630.2 provides in part that physical characteristics not caused by a physiological disorder do not constitute an impairment. See *Andrews, supra* at 808, citing

---

[1] Plaintiffs do not allege that Defendants took any action because of a record of impairment.

1  29 C.F.R. Pt. 1630, App.  A physical characteristic is only considered a disability if it is a

2  physiological disorder, Plaintiffs' contention that they were regarded as obese was not enough to

3  establish a claim under the ADA.  See also, *Francis v. City of Meriden*, 129 F.3d 281, 286 (2d

4  Cir. 1997) ("Physical characteristics that are 'not the result of a physiological disorder' are not

5  considered 'impairments' for the purposes of determining either actual or *perceived* disability"),

6  *E.E.O.C. v. Watkins Motor Lines, Inc.*, 463 F.3d 436, 443 (6th Cir. 2006) ("…to constitute an

7  ADA impairment, a person's obesity, even morbid obesity, must be the result of a physiological

8  condition").

9        California's controlling precedent is also instructive. *Cassista v. Community Foods, Inc.*,

10  5 Cal.4th 1050, 1064-1065, (1993).  In *Cassista*, the California Supreme Court acknowledged

11  that California's disability standard is in harmony with the federal definition of disability under

12  the ADA, and that both require that a disability be an actual or perceived physiological disorder

13  affecting at least one major system and substantially limiting one or more major life activity.  *Id.*

14  at 1060.

15        Plaintiffs' First Amended Complaint relies on a nonbinding, non-persuasive, unpublished

16  case from a Louisiana District Court, *U.S. Equal Opportunity Comm'n v. Res. for Human Dev.*,

17  2:10-CV-03322, 2012 WL 669435 (E.D. La. Feb. 29, 2012) to argue that obesity is a disability.

18  FAC at 25, ¶85.  However, that case is clearly distinguishable.  The plaintiff was a 527-pound

19  woman disabled because of her diabetes and heart problems resulting from her severe obesity.

20  Thus, obesity was not the disability.  *Id.* at 3.  The defendant in that case conceded that it

21  regarded the plaintiff's weight and other conditions to substantially limit her walking ability, thus

22  the court did not even have the occasion to determine whether obesity alone constitutes a

23  disability.  *Id.* at 3.  Craig and Andrade's legal authority for their ADA cause of action utterly

24  fails because the Plaintiff in that case was legally disabled by diabetes and heart disease.

25        In their First Amended Complaint, Plaintiffs expressly plead that they are not disabled by

26  any impairment.  FAC at 26, ¶89.  Plaintiffs also plead that Police Chief Baldiviez did not

27

28

consider Craig to be disabled when Baldiviez told Craig "You are fit to exercise". FAC at 25, ¶87. Again, Plaintiffs were never removed from patrol duty because of weight. Baldiviez Dec. ¶5  Therefore, Plaintiffs and Defendants agree that Plaintiffs were considered obese and not disabled.

It would be disingenuous and constitute an amendment to their First Amended Complaint for Plaintiffs to now claim that they were impaired. If they were to make such a claim, the standard Plaintiffs must meet would be that an impairment substantially limited one or more major life activities. See *Walton v. U.S. Marshals Serv.*, *supra* at 1006 (holding that an employee considered impaired "must also provide evidence that the imputed impairment is objectively substantially limiting"). The very act of Defendants developing a weight loss program as pled in the complaint and as described by Chief Baldiviez (Baldiviez Dec. ¶¶2-11), and Plaintiffs' allegation that the Police Chief considered them fit to exercise establishes that Plaintiffs and Defendant agree that Plaintiffs were not substantially limited by an impairment. There is no disputed fact. The parties agree that there was no substantially limiting impairment.

Obese police officers are not well suited for active police work. Baldiviez Dec. ¶2; **Exs. A and B**. It is not discrimination under the ADA for an employer to consider some people less suited for a job. *E.E.O.C. v. United Parcel Serv., Inc.*, *supra* at 797. Being obese might be an impairment to good police operation, but an employer's observation that an officer is obese does not establish that the employee has a substantially limiting impairment. *Walton v. U.S. Marshals Serv.*, *supra* at 1009 citing *Murphy v. United Parcel Serv., Inc.*, 527 U.S. 516, 523 (1999). Throughout the weight loss program, King City never removed the Plaintiffs from their duties, and Plaintiffs were not evaluated as having physical limitations based on any disability. Baldiviez Dec. ¶5. In Chief Baldiviez's letters to the Plaintiffs informing them that they were being enrolled in the weight loss program, he specifically stated that they were being enrolled because they appeared over weight and the police department has fitness requirements; he did not mention any limitations due to weight. Baldiviez Dec. ¶4; **Exs. A and B**. Thus, the facts are

undisputed that Plaintiffs were put into the weight loss program because they were overweight, not disabled.

Furthermore, there is no evidence of any physiological condition at all. In fact, both Plaintiffs initially lost weight on the program. Baldiviez Dec. ¶¶10-11. Plaintiff Craig was later given a letter memorializing a discussion he had with police administration because, rather than losing weight as the doctor recommended, he protested the program and gained an enormous amount of weight. Baldiviez Dec. ¶10; **Ex. E**. The discussion memorandum was related to how Craig needed to improve himself. It did not mention any disability or perception of disability. Baldiviez Dec. ¶10; **Ex. E**.

Plaintiffs are not qualified disabled employees. King City did not perceive Plaintiffs to be disabled. Plaintiffs agree that they were not disabled and the Police Chief did not consider them disabled. FAC at 25 ¶87.

3.  <u>There is no evidence that either Andrade or Craig were subjected to adverse employment actions because of any actual or perceived disability.</u>

Since there is no recognized disability and no employer perception that Plaintiffs were disabled, there could not be any adverse employment action based on a physical condition that is not a disability. See *Murphy v. United Parcel Serv., Inc.*, *supra* at 523-525 (1999) (holding that terminated employee did not qualify under the ADA without evidence he was actually or perceived to be disabled). Additionally, the Plaintiffs cannot claim that they were regarded as disabled due to obesity when they themselves previously voted to institute a physical fitness test within the department due to the KCPOA's perception that several of the officers were overweight. Hunter Dec. ¶3; **Ex. U.**

In regards to adverse actions taken by Defendants, the decisions to terminate Craig and suspend Andrade were clearly related to Craig's failure in the psychological testing, and Andrade's misconduct as opposed to some view that they were suffering a physiological impairment making them fat. Baldiviez Dec. ¶¶2-13, 20-26. Accordingly, there is no evidence

1  of any adverse action due to disability.  Partial summary judgment should be granted dismissing
2  Plaintiffs' second claim for discrimination in violation of the Americans With Disabilities Act.
3      **C.    Partial Summary Judgment Should be Granted Dismissing the Sixth Cause**
4  **of Action Since It is Undisputed That There Was No Interference with Plaintiffs' Union**
5  **Membership and Activity.**
6      Plaintiffs' allege that orders issued by Chief Baldiviez prohibiting Aguayo from
7  contacting any other employee and requiring that other employees report all contact with Aguayo
8  violated their rights to engage in political activities under California Government Code section
9  3302(a).  FAC at 35 ¶¶129-130.  Section 3302(a) provides in part that, "Except as otherwise
10 provided by law, or whenever on duty or in uniform, no public safety officer shall be prohibited
11 from engaging, or be coerced or required to engage, in political activity."  There is no credible
12 material evidence that Plaintiffs were ever prevented from engaging in political activities by
13 anyone in King City.
14     Plaintiffs have not produced any evidence of "political activities" that were prohibited.
15 They imply that all union activity is political activity, but do not provide any legal support for
16 such a contention.  FAC at 35 ¶¶129-130.  Further, there is no evidence that either Plaintiff was
17 prohibited from engaging in union activities.  Chief Baldiviez sent Aguayo a letter notifying him
18 that he was being placed on administrative leave pending the investigation of criminal conduct
19 and department rules.  Baldiviez Dec. ¶15; **Ex. H.**  The letter clearly states in the third paragraph
20 that Aguayo was ordered to have no contact with persons involved in the investigation or any
21 City employee other than Aguayo's union representative and those directed by Chief Baldiviez.
22 Baldiviez Dec. ¶16; **Ex. I**.  In his order to other employees, Chief Baldiviez ordered that
23 employees tell him if they had contact with Aguayo.  Baldiviez Dec. ¶17; **Ex. I**.  He did not
24 prohibit communication.  Baldiviez Dec. ¶17; **Ex. I**.  When Aguayo was asked whether the no-
25 contact order prevented him from attending any union meetings, he testified that he could not
26 remember and acknowledged that he actually did attend a King City Police Officers Association
27
28 Memo of P&A ISO Defts' Mot for Partial Sum Judg     13     Case No. CV11-04219 EDL

meeting regarding medical insurance while the order was still in place.  Cohen Dec. ¶2; **Ex. V**, 95:17-97:6.  Furthermore, Aguayo acknowledged that there was no interference with union activities after the order was subsequently modified (Baldiviez Dec. ¶17; **Ex. K**), thus there is no evidence of any interference with union activity from the first implementation of the order through the conclusion of the discipline appeal.  Cohen Dec. ¶2; **Ex. V,** 98:1-5.  The evidence shows that Aguayo did participate in union activities and there is no dispute of material fact about any prohibition since Aguayo testified that he did attend a union meeting and no one else was prohibited from talking to him.

## IV.
## <u>CONCLUSION</u>

Summary judgment should be granted pursuant to FRCP 56(c) to the second and sixth claims of the Plaintiffs' complaint based on ADA discrimination and POBR.  There is no material disputed fact that should be decided by a jury that Plaintiffs were qualified disabled persons, or that the City perceived them to be qualified disabled persons, because obesity is not an ADA recognized impairment or disability.  Additionally, there is no materially disputed fact that should be decided by a jury whether Plaintiffs were prohibited from participating in any political activity by any order of Chief Baldiviez since the facts show that they were not prohibited.

Partial summary judgment should be granted in favor of Defendants on those claims.

Dated:  September 4, 2012

LAW OFFICES OF VINCENT P. HURLEY
A Professional Corporation


By: _____/s/ Raymond Thomas_____
      RAYMOND A. THOMAS
Attorneys for Defendants CITY OF KING CITY,
NICK BALDIVIEZ, MICHAEL POWERS,
MARK BAKER, and JERRY HUNTER
